1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF PUERTO RICO**

**MIGUEL A. ORTIZ-TORRES,**

    **Plaintiff,**

    **v.**                                        **Civil Action No. 08-1154(GAG)**

**COOPERTIVA DE SEGUROS DE VIDA DE PUERTO RICO ("COSVI"), GROUP HEALTH PLAN "COSVIMED"**

    **Defendant.**

---

**OPINION AND ORDER**

Plaintiff Miguel A. Ortiz-Torres ("Ortiz") brought this action against the Coopertiva de Seguros de Vide de Puerto Rico ("COSVI") seeking recovery of benefits and damages under sections 502(a)(1)(A)-(B), 502(a)(3) and 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(A)-(B), 1132(a)(3) and 1140.  Plaintiff commenced this action after being denied payment by COSVI for medical services he received in the United States which were allegedly covered by the plaintiff's medical insurance plan.  This matter is presently before the court on plaintiff's and defendant's cross-motions for judgment based on the administrative record under § 502(a)(1)(A)-(B) of ERISA, 29 U.S.C. § 1132(a)(1)(A)-(B).  (Docket Nos. 71 & 79.)

After reviewing the pertinent law, the court **GRANTS** the defendant's motion for Judgment on the Administrative Record.  (Docket No. 71.)  Plaintiff's motion, (Docket No. 79) in turn, is **DENIED**.

**I.      Relevant Factual & Procedural Background**

On September 1, 2005, COSVI issued a group health policy for the employees and executives of Retail Management.[1]  At the time the policy was issued, Mr. Ortiz was the President and owner

---

[1]Prior to the issuance of this policy, Ortiz was covered under another insurance policy which

**Civil No. 08-1154(GAG)**                                2

of Retail Management.  The policy issued by COSVI expressly provides that with respect to COSVI's authority and discretion to determine eligibility and benefits requested under the plan, "COSVIMED has the absolute power and discretion to determine, interpret and finally solve eligibility controversies."  Pursuant to the plan, insured members are required to receive pre-authorization for medical treatment that is received outside of Puerto Rico.  The plan further states in pertinent part that an enrollee has the right to receive reimbursement for eligible treatments outside of Puerto Rico if the treatments are previously authorized by COSVIMED and the medical treatment is not offered in Puerto Rico.

On or around June 2005, Ortiz was diagnosed with cancer.  On August 19, 2005, Ortiz sent COSVI an application requesting pre-authorization for a medical evaluation at the Memorial Sloan Kettering Cancer Center ("MSK").  He also requested a pre-authorization from COSVI to obtain medical services outside Puerto Rico at MSK in New York.  On August 22, 2005, Dr. Rafael Paoli, COSVI's Medical Director, sent a letter to Ortiz denying his pre-authorization to receive treatment at MSK, citing the fact that the requested treatment was available in Puerto Rico as the reason for the denial.  The letter further stated that if Mr. Ortiz still wished to go to the U.S., he could do so, but those services would be paid through reimbursement according to contracted fees in Puerto Rico. Finally, the letter stated that Mr. Ortiz had 60 days to appeal the decision by mail.

Ortiz was admitted to MSK on August 18, 2005.  At the time of his admission, because he had not received pre-authorization, Ortiz made an out-of-pocket deposit of $40,988.00 in order to guarantee payment to the hospital and begin treatment.  Because Ortiz was present at MSK in New York on August 23, 2005, Mr. Jean Pierre Legrand, COSVI's Vice President Assistant, made the administrative decision to authorize only a medical evaluation and nodule biopsy for Ortiz at MSK in New York.  On August 24, 2005, Dr. Paoli sent a letter addressed to Ortiz which stated that he was authorized to receive these preliminary treatment.  The letter further stated that any additional

---

provided less benefits than the latter policy with respect to medical services received in the United States.

**Civil No. 08-1154(GAG)**                              3

service or treatment other than that which was authorized would require further authorization prior to it being rendered.  On September 22, 2005, Ortiz sent a letter to Mrs. Sylvia Corbin, Associate Director of Patient Financial Services at MSK, requesting the return of the deposit money he made.

On September 27, 2005, Ortiz personally traveled from New York to Puerto Rico to attend a meeting with Rafael Paoli, Jean Pierre Legrand, and Rosa de L. Martino, COSVI's Manage Care Supervisor.  The parties disagree as to what happened at this meeting.  Ortiz claims that during this meeting Dr. Paoli agreed on multiple occasions that COSVI would pay in full for the medical treatment.  He also asserts that during the meeting Dr. Paoli asked Sylvia Corbin, for certain documentation regarding Ortiz's treatment and he also inquired into the possibility of having MSK directly bill COSVI for the provided services.  On the other hand, COSVI avers that during the meeting, Ortiz was informed that since he had opted to receive medical treatment abroad for services that were offered through COSVIMED providers in Puerto Rico, COSVI, would only reimburse the expenses based on the contract amounts for providers in Puerto Rico. Further, COSVI asserts that the abovementioned request for direct billing was only made with respect to the percentage of the costs that COSVI would be willing to pay under the policy without pre-authorization.  Finally, COSVI asserts that during the meeting, the parties agreed to coordinate an appointment with Dr. Fernando Cabanillas, Medical Director of the Cancer Center of Auxilio Mutuo Hospital, to evaluate the possibility of Mr. Ortiz completing his treatment in Puerto Rico.

On October 6, 2005, Sylvia Corbin sent an email to Dr. Paoli regarding the total estimated cost of Ortiz's treatment.  MSK continued to send these invoices regarding the treatment received by Ortiz.  During this time, Ortiz continued to receive treatment at MSK.  On October 10, 2005, Ortiz sent a letter to Dr. Paoli indicating the various attempts Ortiz had made to communicate with him regarding Dr. Paoli's agreement to pay the entire amount of Ortiz's medical treatment at MSK, which he had allegedly made on September 27, 2005.

On July 31, 2006 and August 14, 2006, Ortiz began receiving statements from MSK attempting to collect an outstanding amount of $20,941.61.   On September 6, 2006, Ortiz through

**Civil No. 08-1154(GAG)**                    4

his attorney, Mr. Pedro Giner Dapena, sent a letter/claim to COSVI requesting payment of $61,929.61 for medical services received by the plaintiff at MSK.  Ortiz claims that this letter constitutes a post-service claim as authorized under the insurance plan.  On October 12, 17, 19, 27 and December 6, 2006, various communications were made with COSVI on behalf of Ortiz, requesting a response to his letter of September 6, 2006.  On December 26, 2006, COSVI's Legal Advisor, Mr. Delwin Velez ("Velez"), replied to Ortiz's letter of September 6, 2006.  In this response, Velez attached statements regarding COSVI's payments pursuant to the Insurance policy and the supporting documents.  Velez further reiterated the policy regarding pre-authorization for medical services received in the United States and explained why COSVI had not paid the entire amount billed to them by MSK.

On January 12, 2007, a letter was sent to Velez requesting relevant documentation in order to support Ortiz's appeal of the alleged December 26, 2006 denial.  On February 5, 2007, Velez responded that COSVI had already provided the requested documentation in the letter dated December 26, 2006.  On February 16, 2007, Ortiz filed an appeal of COSVI's December 26, 2006 letter.  Ortiz claimed in his appeal that COSVI never complied with its obligations under the plan to timely and adequately respond to his September 26, 2006 post-service claim.  On June 20, 2007, Velez sent a letter to plaintiff's attorney once again reiterating the reasons why COSVI did not pay in full for the medical services received by the plaintiff at MSK.  On August 17, 2007, Plaintiff's attorney, Pedro Giner Dapena, sent a letter to COSVI which contained the same text as the letter of February 16.  On August 20, 2007,  Myrna Cruz, Compliance and Privacy Officer at COSVI's Legal Department, replied to the August 17 letter and referred counsel Dapena to the three previous letters sent on December 19, 2006, December 26, 2006, and June 20, 2007, where COSVI reiterated its position that the services had been paid in accordance with the insurance policy, based on the fees contracted with providers in Puerto Rico when the services were received in the United States without pre-authorization.

On January 18, 2007, Myrna Cruz requested information regarding the status of the company

**Civil No. 08-1154(GAG)**                    5

Retail Management.  On January, 19, 2007, Ms. Cruz was informed that Retail Management's policy was cancelled on August 31, 2006, and there was a balance pending for the amount of $16,742.80 for unpaid months of coverage.  Included in her letter of August 20, 2007 to the plaintiff, informing him of the reasons for the partial payment, Ms. Cruz also made reference to this outstanding balance owed by Retail Management to COSVI.  Frustrated by COSVI's failure to adequately respond to his requests, the plaintiff filed this claim averring various failures of COSVI to comply with the statutory requirements of ERISA.  The matter is presently before the court on plaintiff's and defendant's cross-motions for judgment based on the administrative record under § 502(a)(1)(A)-(B) of ERISA, 29 U.S.C. § 1132(a)(1)(A)-(B).

**I.       Dismissal for Failure to State a Claim**

       In its motion for judgment on the record, COSVI  moves for dismissal, citing the plaintiff's failure to exhaust all administrative remedies as grounds for dismissal.  Dismissal under ERISA for failure to exhaust administrative remedies should be reviewed under a 12(b)(6), failure to state a claim standard.  Fernandez-Vargas v. Pfizer Pharmaceuticals, Inc., 394 F.Supp. 2d 407, 411 (D.P.R. 2005).  When considering a motion to dismiss, the court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level."  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).  The court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. See id.; Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555).

       Claimants seeking benefits under ERISA plans are required to exhaust their administrative remedies under a plan before seeking judicial relief.  See Forcier ex rel. Forcier v. Forcier, 406 F. Supp. 2d 132, 140 (D. Mass., 2005).  However, the First Circuit has held that "[t]raditional exhaustion principles do include an exception for instances when resort to the administrative route is futile. . . ." Drinkwater v. Metropolitan Life Ins. Co., 846 F.2d 821 (1st. Cir. 1988).  Futility can

Civil No. 08-1154(GAG)                        6

be demonstrated by showing an administrator's failure to adequately respond to an appeal. See
Madera v. Marsh USA, INC., 426 F.3d 56, 62 (1st Cir. 2005) (citing DePina v. General Dynamics
Corp., 674 F.Supp. 46 (D.Mass.1987), and McLean Hosp. Corp. v. Lasher, 819 F.Supp. 110
(D.Mass.1993) (recognizing an administrator's failure to provide adequate written notice for a denial
of benefits constitutes futility where an employee has made a claim for benefits).

    The Plaintiff alleges in his complaint that on February 16, 2007 and then again on August
17, 2007, he filed timely appeals regarding what he referred to as his December 26, 2006 "post-
service" claim.  Based upon the plaintiffs pleadings, it appears that he was, in fact, attempting to
exhaust his administrative remedies by timely filing these appeals.  Discouraged by the letters that
he received from COSVI in response to these appeals, Mr. Ortiz considered his efforts to appeal their
decision to be futile, as it appeared to him as though COSVI was refusing to comply with the steps
required for appeal.  He considered COSVI's responses to be intentional attempts to impede a full
and fair appeal process.  In drawing all reasonable inferences in favor of the plaintiff, the court finds
that Ortiz has sufficiently pled that he had either exhausted all administrative remedies, or
represented the futility of doing such, prior to bringing this cause of action.  The court therefore
**DENIES** COSVI's motion to dismiss for failure to state a claim.

**II.      Judgment on the Administrative Record**

    **A.**    *Standard of Review*

    Plaintiff and defendant disagree on the standard of review that should be applied to the
court's review of the administrative record.  Defendant contends that the Supreme Court's ruling in
Firestone Tire & Rubber Co. V. Bruch, 489 U.S. 101 (1989) is controlling in deciding what standard
of review the court should apply when a denial of benefits is challenged under 29 U.S.C.
§1132(a)(1)(B).  The court in Firestone declared that a *de novo* standard was to be used unless the
benefit plan specifically gave the administrator or fiduciary "discretionary authority to determine
eligibility for benefits or to construe the terms of the plan."  489 U.S. at 105.

    The First Circuit has interpreted this language in Firestone to say that "Firestone and its
progeny mandate a deferential "arbitrary and capricious" standard of judicial review." Recupero v.

**Civil No. 08-1154(GAG)**                                    7

New England Tel. and Tel. Co., 118 F.3d 820, 827 (1st Cir. 1997); see Terry v. Bayer Corp., 145 F.3d 28, 37 (1st Cir. 1998) (finding specific contract language sufficient to grant discretionary authority, requiring the court to review under "arbitrary and capricious standard").[2]  The court in Terry pointed to the fact that the chosen language "specifically allocate[d] to the Company the right to find necessary facts, determine eligibility for benefits, and interpret the terms of the Plan." Id.

In this case, the language of the contract mirrors the words highlighted by the First Circuit. The contract stated that, "COSVIMED has the absolute power and discretion to *determine, interpret, and finally solve eligibility controversies*, interpretation of benefits and rights under the plan and its determinations will be final conclusive and firm." (AR 110, 118) (emphasis added).  Based upon First Circuit precedent, the court finds that this language is more than sufficient to grant discretionary authority to COSVI, and thus require review under the "arbitrary and capricious" standard. See Wright v. R.R. Donelley & Sons Co., 402 F.3d 67 (1st Cir. 2005).

In addition to assessing the language of the policy,  the court must also determine whether the plan administrator was in a position to soundly utilize their discretion absent influence from some conflicting interest.  See Firestone Tire & Rubber Co. V. Bruch, 489 U.S. at 105.  In Firestone, The Supreme Court declared that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion."(quotation omitted). Id.  The First Circuit has held that an "apparent conflict," which arises out of the administrator's role in collecting premiums as well as

---

[2] The language of the contract stated:

> The Company shall have the exclusive right to make any finding of fact necessary or appropriate for any purpose under the Plans including, but not limited to, the determination of the eligibility for and the amount of any benefit payable under the Plans. The Company shall have the exclusive discretionary right to interpret the terms and provisions of the Plans and to determine any and all questions arising under the Plans or in connection with the administration thereof, including, without limitation, the right to remedy or resolve possible ambiguities, inconsistencies, or omissions, by general rule or particular decision.

**Civil No. 08-1154(GAG)**                               8

paying claims, without more, cannot change or heighten the "arbitrary and capricious" standard. See Doe v. Travelers Ins. Co., 167 F.3d 53, 57 (1st Cir. 1999) (holding that the insurer's "general interest in conserving its resources is [not] the kind of conflict that warrants *de novo* review"). A financial conflict does not exist merely because the plan administrator "decided which claims it would pay." Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st. Cir. 1998).

Ortiz contends that COSVI was working under a conflict of interest and therefore requests that the court review the administrative record applying a *de novo* review. The court rejects this contention. The plaintiff avers that COSVI was acting under a conflict of interest for the following reasons: 1) COSVI administered both the plan and the claims procedure; 2) COSVI was responsible for paying the benefits; 3) Retail Management was no longer a client of COSVI and therefore they had no business to lose; 4) COSVI denied his claim because Retail Management had an outstanding balance on premiums owed to the company. (See Docket No. 80 at 14-16.) The court finds that none of these proffered reasons satisfies sufficient proof as established under First Circuit precedent.

The first two reasons merely demonstrate the "inherent conflict," which has been held to be insufficient to find a conflict of interest. See Doe v. Travelers Ins. Co., 167 F.3d at 57; Doyle v. Paul Revere Life Ins. Co., 144 F.3d at 184. Furthermore, the third and fourth reasons are not sufficiently demonstrated by the record. COSVI's denial of the plaintiff's claim was issued on August 22, 2005, over a year before Retail Management had terminated its relationship with COSVI and fallen behind on its payment of premiums. Therefore, COSVI personnel could not have improperly considered such information when making the determination to deny plaintiff's claim, as it had not occurred yet. Ortiz cites a reference to this unpaid premium balance that appears in the August 20, 2007 letter from Myrna Cruz as evidence of COSVI's improper motive. However, this letter does not attribute any part of COSVI's decision making process to the existence of this unpaid balance. The letter merely reiterates COSVI's reasons for making only partial payments for the services received, referring Mr. Ortiz to their previous letters which state that payments on this claim had already been issued. Although the end of the letter mentions the unpaid balance on the account, these circumstances did not even exist when COSVI made the decisions to which they refer Mr. Ortiz to

**Civil No. 08-1154(GAG)**                          9

in the letter.  Thus, the court finds that there is not sufficient proof proffered to establish that COSVI was acting under an impermissible "conflict of interest" when making decisions based on Ortiz's claims.  Therefore, the court will proceed under a deferential "arbitrary and capricious" standard of review.

     B.   *Discussion*

     In the ERISA context, it has been stated that under the "arbitrary and capricious" standard, "a fiduciary's interpretation of a plan will not be disturbed if reasonable."  Terry v. Bayer Corp., 145 F.3d at 40 (quoting DeWitt v. Penn-Del Directory Corp., 106 F.3d 514, 520 (3d Cir.1997)).  This "arbitrary and capricious" standard is the functional equivalent of an abuse of discretion standard. Pari-Fasano v. ITT Hartford Life and Acc. Ins. Co., 230 F.3d 415, 419 (1st. Cir. 2000).  An administrator's determination will be upheld if it is within its authority, reasoned, and supported by substantial evidence in the record.  See Gannon v. Metropolitan Life Insurance Company, 360 F.3d 211, 213 (1st Cir. 2004) (citing Vlass v. Raytheon Employees Disability Trust, 244 F.3d 27, 30 (1st Cir. 2001)).  See also Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 183-184 (1st Cir. 1998).  The court can overturn a termination of ERISA benefits only if "the insurer's eligibility determination was unreasonable in light of the information available to it."  Pari-Fasano v. ITT Hartford Life and Acc. Ins. Co., 230 F.3d at 419.

     In this case, the administrative record substantially supports COSVI's factual determination that Ortiz did not obtain pre-authorization to receive medical treatment in the United States and that the services he requested were available in Puerto Rico.  (See AR 6.)  The record further demonstrates that COSVI recommended Dr. Fernando Cabanillas, Medical Director of the Auxilio Mutuo Hospital Cancer Center, to Mr. Ortiz as an option to continue his treatment in Puerto Rico. (See AR 692-95.)  The plaintiff offers no contradicting evidence that these services were not available in Puerto Rico, nor does he contend this in his deposition.

     Although the manner in which COSVI handled Mr. Ortiz's requests may not have been expeditious, its decision was not **"**arbitrary and capricious."  There is substantial evidence on the record to demonstrate that Mr. Ortiz's "post service" claim was merely an untimely appeal of a claim

**Civil No. 08-1154(GAG)**                    10

that had already been decided beyond appealability.  COSVI's responses to the "post-service" claim, as well as to the corresponding "appeals," are consistent with its belief that this exact claim had already been denied pre-authorization on August 22, 2005.  Although plaintiff characterizes these letters as "post-service" claims, the court finds that the record substantially supports COSVI's assertion that these are merely *de facto* appeals of the original claim which was denied on August 22, 2005.  (See AR 6.)  The alleged "post-service" claim was for the same medical treatment received from August to December 2005 and on January 2006 at MSK, which COSVI had previously not pre-authorized.  (See AR 316.)  While COSVI's insurance policy does in fact provide for post-service claims, such a claim can obviously not be utilized to revive a pre-authorization request that had already been denied.  Such an interpretation of the policy would permit beneficiaries to appeal adverse decisions long after the stated 60 day time limit for an appeal.  "Internal appeal limitations periods in ERISA plans are to be followed just as ordinary statutes of limitations."  Gayle v. United Parcel Service, Inc., 401 F.3d 222, 226 (4th Cir. 2005) (citing Terry v. Bayer Corp., 145 F.3d 28, 40 (1st Cir. 1998) ("Haphazard waiver of time limits would increase the probability of inconsistent results where one claimant is held to the limitation, and another is not.")).  Therefore, the court finds that COSVI's designation of Ortiz's letters of September 6, 2006, and August 17, 2007 as untimely appeals, is sufficiently supported by the administrative record.

The evidence supporting COSVI's determination not to consider Mr. Ortiz's letters as a separate claim far outweighs the evidence demonstrating that COSVI had agreed to authorize full payment of the procedure at MSK.  On August 22, 2005, in accordance with the insurance plan, COSVI agreed to pay for the services received through reimbursement according to contracted fees in Puerto Rico.  (See AR 147.)  All of the documents pertaining to the claim as well as the payments made on the claim are consistent with COSVI's position that they agreed to cover only a percentage of the treatment.  (See AR 6; 7; 8; 9; 330-35, 554.)  The evidentiary weight of these documents is only contravened by the statements of the plaintiff, both through unanswered letters as well as deposition testimony, in which he contends that Dr. Paoli told him on numerous occasions that the hospital would pay for the entire procedure. (See AR 243-44, 249-50; see also Docket No. 75-3 at

**Civil No. 08-1154(GAG)**                 11

64, 75, 76, 80, 85.)  While such evidence is considered by the court as part of the record, it is not sufficient to establish an "abuse of discretion" on the part of COSVI in not giving substantial weight to these uncorroborated assertions when considering the plaintiff's attempts to appeal their decision. See Doyle v. Paul Revere Life Ins. Co., 144 F.3d at 184 ("Sufficiency, of course, does not disappear merely by reason of contradictory evidence.").

Mr. Ortiz's position is further weakened by his own contradictory statements.  Both through his written letters as well as his deposition testimony, Mr. Ortiz was adamant that at the meeting held on September 27, 2005, Dr. Paoli had authorized payment of the entire treatment at MSK. (See AR 243-44, 249-50; see also Docket No. 75-3 at 64, 75, 76, 80, 85.)  However, in an undated letter to Mrs. Sylvia Corbin, Mr. Ortiz states in pertinent part, "[t]his Dr. Paoli is the same person that you spoke to last week when I was there in Puerto Rico and we call you from his office.  Dr. Paoli informed you that the insurance was going to pay for *part of the treatment*. . . ." (See AR 689.) (emphasis added).  This letter, which based on its content was written at least a week after the meeting in Puerto Rico, states that Dr. Paoli had confirmed that the insurance would pay for "part of the treatment."  This written statement by Ortiz clearly contradicts his assertions that Dr. Paoli had told him that COSVI would cover the entire cost of the treatment.  Similar contradictions regarding COSVI's alleged promise to cover the entire treatment appear in Mr. Ortiz's other correspondence with COSVI.  (See AR 249-50, 243.)

In considering the administrative record as a whole, there is not sufficient evidence to establish that COSVI acted "arbitrarily or capriciously" in deciding to deny  Mr. Ortiz's claim on August 22, 2005.  Nor is there substantial evidence to find that the court should not defer to the determination made by COSVI in deciding the manner in which to handle Mr. Ortiz's "post-service" claim.  As such, the court defers to COSVI's judgment and dismisses, with prejudice, plaintiffs claim under §502(a)(1)(A)-(B) of ERISA, 29 U.S.C. §1132(a)(1)(A)-(B).

**IV.    Conclusion**

For the foregoing reasons, the court **GRANTS** COSVI's motion for judgment on the

**Civil No. 08-1154(GAG)**                    12

administrative record.  (Docket No. 71.)[3]


   **SO ORDERED**

   In San Juan, Puerto Rico this 22nd day of October, 2009.


                                        *S/Gustavo A. Gelpí*
                                        GUSTAVO A. GELPÍ
                                        United States District Judge

---

   [3] Given the court's ruling in this matter, it becomes unnecessary for the court to address plaintiff's other claims.